IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA A. BRACKIN, *et al.*,   )
                                )
    Plaintiffs,              )
                                )
v.                              )   CASE NO. 2:12-CV-750-WKW
                                )         [WO]
KEVIN J. ANSON, *et al.*,       )
                                )
    Defendants.              )

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendants Kevin J. Anson and Christopher Denson's motion for summary judgment (Doc. # 20), which has been fully briefed.  (Docs. # 21–29 (Brief and Evidence); 34–35 (Responsive Brief and Evidence); and 36 (Reply).)[1]  After careful consideration of the parties' arguments and the relevant law, the court concludes that Defendants' motion is due to be granted.

## **I.  JURISDICTION AND VENUE**

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  Personal jurisdiction and venue are uncontested.

## **II.  STANDARD OF REVIEW**

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a

---

[1] All citations to the record in this case are to page numbers created by CM/ECF.

matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324.

### III. BACKGROUND

Plaintiffs Barbara A. Brackin, Steven A. Buchanan, and Nyle H. Trimble are all former biologist aides who worked for the Marine Resources Division ("MRD") of the Alabama Department of Conservation and Natural Resources ("DCNR") in Baldwin County, Alabama. Defendant Anson is Chief Biologist for the MRD; Defendant Denson is the Assistant Chief Biologist. Defendants were some of

Plaintiffs' supervisors who investigated Plaintiffs, determined that Plaintiffs had falsified their time records and been derelict in their work duties, and recommended that the DCNR Commissioner terminate their employment.

While employed for the DCNR, Plaintiffs performed data collection activities that involved surveying recreational fishing activities. The MRD gathers information through surveying and other methods in order to manage species by setting creel limits, size limits, and seasons to harvest. Typically, biologist aides worked together in teams of two. Ms. Brackin and Mr. Buchanan often worked together; sometimes Ms. Brackin worked with Mr. Trimble; and sometimes Mr. Trimble worked with other employees, including Jay Gunn, who is not a plaintiff in this suit. Biologist aides documented their work on daily activity reports. Plaintiffs represent that they and other employees commonly recorded their activities after the fact.

For various reasons, Defendants aver that they came to suspect that several MRD employees – not just Plaintiffs – were failing to perform their assigned duties and that the dereliction of duties was compromising the MRD's efforts to conduct two recreational fishing survey programs. Defendants decided to acquire and use two GPS tracking devices called "track sticks" to monitor the movement of State-owned vehicles and boats used by Plaintiffs and other employees in the course of their work hours. While Defendants represent that the track sticks were useful for

validating employees' locations and records, Plaintiffs allege that Defendants acquired and used the track sticks solely for the purpose of developing a case in support of their terminations. Plaintiffs were unaware of Defendants' suspicions and claim they were not confronted until after Defendants acquired the allegedly faulty evidence Defendants wanted.

Plaintiffs aver that Defendants never used the track sticks before using them on Plaintiffs' boats and vehicles, never tested or verified the devices, and never consulted persons with knowledge about the proper use of the track sticks. Plaintiffs claim that Defendants installed the track sticks underneath boat radio transmitters and in other concealed locations which adversely affected the track sticks' ability to provide accurate data. Defendants used the track sticks from February to April of 2010, during which time Defendants contemporaneously monitored Plaintiffs' time and activity logs for discrepancies. To summarize briefly a large volume of evidence, the track stick data confirmed Defendants' suspicions. By assessing the track stick GPS information, Defendants determined that Plaintiffs did not work as many hours as they claimed and falsely reported working before 8:00 a.m. in order to acquire compensatory time off.

In late April and early May of 2010, Defendants confronted and interrogated Plaintiffs individually about the disparities between the track stick data and Plaintiffs' activities as logged in their activity reports. Because the interrogations

involved events that occurred 45–60 days earlier, Plaintiffs say they could not recall accurately their reported work or explain discrepancies between their reports and the track stick reports.[2]  Defendants recommended to then-Director of the MRD, Vernon Minton, that Plaintiffs be terminated, and the same recommendations were forwarded to DCNR Commissioner Barnett Lawley. Commissioner Lawley notified Plaintiffs of their pre-termination conference and that they were charged with falsification of records, insubordination, dereliction of duties, and improper claims of compensatory time.

Defendants also confronted other employees, too, including Jay Gunn, who received a pre-termination notice like Plaintiffs did.  Gunn immediately challenged the track stick information as unreliable.  He produced photographic evidence, a signed letter from a field interview witness, and other eyewitness testimonies that corroborated Gunn's presence in places not recorded by the track sticks.  When Defendants were not persuaded, Gunn met with other higher-ups in the MRD – Vernon Minton and Chris Blankenship – to challenge Defendants' recommendation of dismissal.  Minton recommended that Gunn be suspended and demoted rather than terminated.  Plaintiffs claim that Gunn successfully

---

[2] Plaintiffs' immediate supervisor, Karen Aplin, who is not a defendant, was responsible for reviewing Plaintiffs' records.  Plaintiffs complain that Ms. Aplin never questioned or counseled Plaintiffs prior to Defendants' meetings with Plaintiffs.

undermined the reliability of the track stick data, but Defendants continued to endorse the recommendation that Plaintiffs be dismissed from their jobs.

The Commissioner of the DCNR held Plaintiffs' pre-dismissal conference in Montgomery, Alabama, at DCNR headquarters on July 29, 2010. He heard the Defendants' evidence against Plaintiffs and accepted Defendants' recommendation to terminate employment effective August 6, 2010. Plaintiffs appealed to the State Personnel Board where the Board conducted a *de novo* review, and Plaintiffs had the opportunity to cross examine Defendants about the track sticks' margin for error and Defendants disregard for Plaintiffs' exemplary records as employees prior to the records falsification charges.[3] In March 2011, the administrative law judge ("ALJ") recommended that the Personnel Board uphold Plaintiffs' terminations. It did.

In July 2012, Plaintiffs brought this suit in state court against Defendants, suing them in their official and individual capacities. Defendants removed the case to this court. Plaintiffs' complaint sets forth five counts against Defendants: (1) 42 U.S.C. § 1983 equal protection violation; (2) 42 U.S.C. § 1983 due process violation; (3) 42 U.S.C. § 1985 conspiracy; (4) defamation; and (5) civil

---

[3] Plaintiffs had clean records before Defendants accused them of misconduct. Ms. Brackin began working for DCNR in 2002. Throughout her tenure, she received "exceeds standards" performance appraisals and received no disciplinary actions. Mr. Buchanan began working for the DCNR in 1993. Throughout his tenure, he was given "exceeds standards" or "consistently exceeds standards" scores for his annual performance appraisals, and like Ms. Brackin, he had no history of disciplinary action. Mr. Trimble began working for the DCNR in 2004. He always received "exceeds standards" evaluations and had no disciplinary record.

conspiracy. Plaintiffs request unspecified equitable and declaratory relief, as well as compensatory and punitive damages. Defendants request summary judgment on all claims against them in both their official and individual capacities.

## IV. DISCUSSION

### A. Federal-Law Claims

#### 1. *Official-Capacity Claims and Eleventh Amendment Immunity*

Defendants argue that Eleventh Amendment immunity bars Plaintiffs' § 1983 and § 1985 claims against them in the official capacities. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "[B]y its terms the Amendment applies only to suits against a State by citizens of another State," but the Supreme Court "ha[s] extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Moreover, "[l]awsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). This is because the state would be responsible for paying any award of damages to the plaintiff. *Id.*

There are two exceptions to Eleventh Amendment immunity: where Congress abrogates state immunity pursuant to its power to enforce Section 5 of the Fourteenth Amendment, or where a state expressly waives its immunity through legislative action. *Id.* at 1524–25. Neither exception applies in this case.

Additionally, in accord with Eleventh Amendment immunity jurisprudence, states are not "persons" subject to suit under § 1983, and a suit under § 1983 against a state official "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). For these reasons, Defendants contend that they are immune from suit in their official capacities.

Plaintiffs counter that they seek not only monetary relief but also "declaratory and injunctive relief," (Doc. # 34, at 18), and "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Defendants reply that Plaintiffs, by their silence, concede that any official-capacity suit for monetary relief must fail. Defendants further contend that Plaintiffs lack standing to sue for declaratory or injunctive relief because Plaintiffs are no longer DCNR employees who will suffer future harms at the hands of Defendants. Although Defendants raise this lack of standing argument in the reply

8

brief, thereby denying Plaintiffs the opportunity to respond, the court must consider the argument because the issue challenges this court's subject matter jurisdiction. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[A] federal court is obligated to inquire into subject matter jurisdiction . . . whenever it may be lacking.").

In their Complaint, Plaintiffs request unspecified "equitable" and "declaratory" relief, and for purposes of this discussion, it will be assumed that the requested relief encompasses injunctive relief. "A plaintiff has standing to seek declaratory or injunctive relief only when he alleges facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (internal quotation marks and alteration omitted). Former employee-plaintiffs face no threat of future injury from their former supervisor or employer-defendants. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997) (holding that former employee-plaintiffs lacked standing to sue employer for injunctive relief); *see also Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) (acknowledging and applying the holding in *Jackson*). Plaintiffs' employment with the DCNR ended in 2010. There is no threat, let alone an allegation of a threat, of continuing harm. The court must agree with Defendants that Plaintiffs lack standing to sue for prospective injunctive relief, and

thus, Plaintiffs' argument to avoid summary judgment on Eleventh Amendment official-capacity immunity is without merit.

The Eleventh Amendment bars any claim against Defendants in their official capacities for monetary relief, and thus, Defendants are entitled to summary judgment on Plaintiffs' official-capacity federal-law claims.

### 2. *Individual-Capacity Claims and Qualified Immunity*

Defendants further assert that they are entitled to qualified immunity on Plaintiffs' federal-law claims against them in their individual capacities. "Government officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1424 (11th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants assert that their actions in this case – namely, investigating Plaintiffs' work performance and recommending Plaintiffs' dismissal – are discretionary functions "undertaken pursuant to the performance of [their] duties" and "within the scope of [their] authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).[4] Defendants further argue that Plaintiffs cannot establish a constitutional violation or identify the existence of any

---

[4] Plaintiffs do not contest that Defendants acted within their discretionary authority when they conducted their investigation and made their recommendations.

Eleventh Circuit or Supreme Court authority that would place Defendants on notice that their actions gave rise to a constitutional violation.

### a. Equal Protection, Substantive Due Process, and § 1985 Conspiracy

Defendants analyze each of Plaintiffs' three federal-law claims, but in the responsive briefing, Plaintiffs discuss only the § 1983 procedural due process claim. Plaintiffs' failure to respond to Defendants' arguments concerning equal protection, substantive due process, or § 1985 conspiracy amounts to abandonment of those claims. *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Defendants are entitled to summary judgment on the equal protection, substantive due process, and § 1985 conspiracy claims. The court will discuss only the procedural due process claim.

### b. Procedural Due Process

Defendants argue that Plaintiffs lack evidence that the DCNR denied them the procedural due process to which they are entitled. The Fourteenth Amendment protects against state deprivations of "life, liberty, or property without due process of law." U.S. Const. amend XIV § 1. "To establish a deprivation of procedural due process, a plaintiff must establish that he holds a constitutionally protected interest in . . . property, that there has been a governmental deprivation of that

interest, and that the procedures accompanying the deprivation were constitutionally inadequate." *Black v. City of Auburn, Ala.*, 857 F. Supp. 1540, 1546 (M.D. Ala. 1994) (De Ment, J.). Permanent employment, terminable only for cause, is a property interest entitling a plaintiff to the protection of procedural due process. *Green v. City of Hamilton, Hous. Auth.*, 937 F.2d 1561, 1564 (11th Cir. 1991). "[T]enured employee[s] [are] entitled to oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story before a state or state agency may terminate [them]." *Black*, 857 F. Supp. at 1546 (quoting *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc) (internal quotation marks omitted)).

In a federal procedural due process challenge, "the pivotal question is whether [the state] provided a post-deprivation process by which [the] plaintiff could seek review of [the] defendants' alleged procedural violation." *Hicks v. Jackson Cnty. Comm'n*, 374 F Supp. 2d 1084, 1090 (N.D. Ala. 2005). "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation . . . arise." *McKinney*, 20 F.3d at 1557. The Eleventh Circuit has held that "state-court review of employment termination decisions qualifies as an adequate post-deprivation remedy." *Autery v. Davis*, 355 F. App'x 253, 255 (11th Cir. 2009) (citing *McKinney*, 20 F.3d at 1563). On the

basis of these authorities, Defendants argue that Plaintiffs have received the due process to which they were entitled.

Plaintiffs respond to Defendants' motion by rehashing an issue that Defendants do not appear to dispute – *i.e.*, that Plaintiffs' permanent employment is a protectable property interest. (*See* Doc. # 34, at 20–21.) Plaintiffs hinge their argument on what they say is "[a] material question of fact" – *i.e.*, "whether [D]efendants knowingly utilized improper, unreliable[,] and flawed data to support their recommendations" that Plaintiffs' employment be terminated. (Doc. # 34, at 22.) This is certainly a fact that the parties dispute, but it is not a relevant factual dispute for purposes of the procedural due process claim pending before this court. There is no genuine dispute that Plaintiffs were afforded notice, an explanation of the grounds for their dismissal, and an opportunity to share their side of the story including the issues that Plaintiffs have underscored in this case (*e.g.*, Defendants' alleged overzealousness to accuse them of wrongdoing, the allegedly compromised and unreliable nature of the GPS-based track stick data, and Plaintiffs' previously untarnished employment records with their agency). As Defendants explain, due process was provided in the form of a pre-termination conference, an appeal, and a full post-termination hearing before an ALJ. Plaintiffs also could have appealed the ALJ's recommendation, but they declined to do so.

Because Plaintiffs have failed to raise a genuine dispute of material fact that Defendants' actions caused them to suffer a denial of procedural due process or any other unconstitutional harm, Defendants are entitled to qualified immunity on Plaintiffs' federal-law individual-capacity claims.[5] Defendants' motion for summary judgment on the federal-law individual-capacity claims is due to be granted.

## B. State-Law Claims[6]

### 1. *Official-Capacity Claims and Absolute Immunity*

Defendants contend that the DCNR is a state agency that is immune from suit pursuant to Article I, Section 14, of the Alabama Constitution. *See* Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). "Under this provision, the State and its agencies have absolute immunity from suit in any court," and "[s]tate officers and employees, in their official capacities[,] . . . also are absolutely immune from suit when the action is, in effect, one against the State." *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). There are limited exceptions to absolute immunity, *see Raley v. Main*, 987 So. 2d 569, 576 (Ala. 2007), but according to Defendants, no exception applies in this

---

[5] Because Defendants violated no constitutional right, it is unnecessary to address whether any constitutional right was clearly established.

[6] Even though Plaintiffs' underlying federal-law claims are due to be dismissed, the court retains authority to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state-law claims that arise from the same facts. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1567 (11th Cir. 1994).

case, and thus, they are entitled to absolute immunity on Plaintiffs' official-capacity claims. Plaintiffs make no argument to the contrary.

The court agrees that Defendants are entitled to the benefit of absolute immunity on Plaintiffs' state-law claims against them in their official capacities.

### 2. *Individual-Capacity Claims and State-Agent Immunity*

Defendants argue further that the doctrine of state-agent immunity precludes Plaintiffs from bringing their state-law claims against Defendants in their individual capacities. In *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), *holding modified on other grounds by Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006), the Alabama Supreme Court set forth a thorough restatement of the state-agent immunity doctrine:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as: (a) making administrative adjudications; (b) allocating resources; (c) negotiating contracts; (d) hiring, firing, transferring, assigning, or supervising personnel . . . .
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity . . . (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Id*. at 405. Defendants maintain that they "exercised their judgment in the administration of the MRD when they investigated Plaintiffs and recommended

15

that they be dismissed from State employment. Defendants assert that in addition to the protection afforded by state-agent immunity, they are entitled to summary judgment because Plaintiffs cannot sustain their state-law claims for either defamation or civil conspiracy.

Plaintiffs acknowledge that it is their burden to establish that Defendants "acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority." *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003). Yet Plaintiffs claim that they successfully rebut the state-agent immunity defense because they have evidence that Defendants "act[ed] beyond [their] authority" when they "fail[ed] to discharge [their] duties pursuant to [. . .] rules or regulations." *Giambrone*, 874 So. 2d at 1052 (quoting *Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000)). Plaintiffs cite Alabama State Personnel Board Rule 670-X-18-.02(5) ("the Personnel Board Rule"), which requires that "[i]n all cases, before dismissing a permanent employee, the appointing authority *shall consider* the previous disciplinary and performance history of the employee and any progressive discipline received." (emphasis added). Plaintiffs then highlight Defendant Anson's admission that he and Defendant Denson "did not consider [P]laintiffs' disciplinary and performance history before recommending [P]laintiffs' termination." (Doc. # 34, at 23.) Hence, Plaintiffs contend that there is an issue of

material fact as to whether Defendants acted beyond their authority by failing to follow the Personnel Board Rule.

Defendants reply that Plaintiffs ignore that the Personnel Board Rule is directed to "the appointing authority." Defendants argue that former Commissioner Lawley is the appointing authority. (*See* Doc. # 36, at 3.) Defendants further assert that even if they personally failed to consider Plaintiffs' disciplinary and performance history in reaching their recommendation to terminate Plaintiffs' employment, the State Personnel Board's Administrative Law Judge who heard Plaintiffs' appeal properly considered each Plaintiff's work history and his or her lack of a disciplinary record. (*See* Docs. # 29-2, at 36 n.42; 29-3, at 30 n.34; 29-4, at 38 n.40 (Recommended Orders of the ALJ to the State Personnel Board).)

Upon consideration of Plaintiffs' contentions, the court concludes that Plaintiffs again stake their argument upon a fact that is not material. Defendants' admission that they failed to consider Plaintiffs' previously untarnished employment records does not mean that Defendants acted "beyond their authority" when recommending that Plaintiffs be fired. Defendants are not "the appointing authority" described in the Personnel Board Rule. They are mid-level supervisors within the MRD. Furthermore, what Defendants chose to do in fulfillment of their supervisory duties is the very sort of discretionary action that state-agent immunity

doctrine exists to protect. *See Ex parte Cranman*, 792 So. 2d at 405. Defendants are thus entitled to state-agent immunity from Plaintiffs' state-law claims against them in their individual capacities.

### 3. *Additional Reasons to Grant Summary Judgment*

Additionally, even if absolute or state-agent immunity is unavailable as a defense, Defendants are nevertheless entitled to summary judgment on Plaintiffs' state-law claims for defamation and conspiracy.

Defendants argue that Plaintiffs have failed to allege when and to whom any defamatory statements were published. They assert as an absolute defense that any allegedly defamatory statements they made about Plaintiffs are true. And further, to the extent that any defamatory publications were made in the course of Plaintiffs' administrative appeal, any publications are protected by an absolute privilege that applies to defamatory publications made in the course of a judicial proceeding. (*See* Doc. # 21, at 40–41.) Plaintiffs make no response to these defenses to the defamation claim. The court therefore deems Plaintiffs' defamation claim abandoned. *See Resolution Trust Corp.*, 43 F.3d at 599.

As for the civil conspiracy claim, Defendants argue that Plaintiffs fail to allege that Defendants acted in a concerted manner to achieve an unlawful purpose and that Plaintiffs lack an underlying tort to support their claim. (*See* Doc. # 21, at 41–42 (citing *Ex parte Alamo Title Co.*, ___ So. 3d. ____, 2013 WL 1032857,

at *11 (Ala. Mar. 15, 2013) *reh'g denied* May 17, 2013; *Goolesby v. Koch Farms, LLC,* 955 So. 2d 422, 430 (Ala. 2006)).

Plaintiffs counter that Defendants worked together to covertly monitor Plaintiffs' vehicles and boats for the purpose of assembling an evidentiary case in support of a recommendation to terminate Plaintiffs' permanent employment. Plaintiffs point out Defendant Anson's admission that he and Defendant Denson collaborated to track MRD employees' whereabouts, and that without the track stick data, there would have been no case to support Plaintiffs' termination. Plaintiffs aver that this amounts to "a concerted action by two or more persons to achieve an unlawful purpose or a lawful purpose by unlawful means." *See Ex Parte Alamo Title Co.*, ___ So. 3d at ____, 2013 WL 1032857, at *11.

Defendants reply that Plaintiffs fail to identify the requisite unlawful purpose or lawful purpose achieved by unlawful means. They further assert that a claim for civil conspiracy necessarily fails in the absence of an underlying tort like, for instance, defamation.

Viewing the facts in the light most favorable to Plaintiffs, it could be said that Defendants "conspired," in the ordinary sense of the word, to build a case to support Plaintiffs' termination. But Plaintiffs have not shown how Defendants' activities – their clandestine use of track sticks on DCNR property, their compilation of track stick data, or their recommending Plaintiffs' terminations for

19

cause – amount to legally cognizable wrongs. "Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed." *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 550 (Ala. 1993). In other words, as Defendants have argued, the absence of an underlying tort renders Plaintiffs' conspiracy claim unsustainable.

Hence, even if Defendants' absolute and state-agent immunity defenses are not viable, Plaintiffs' state-law claims against Defendants still fail to survive summary judgment. *See* Fed. R. Civ. P. 56(a).

## V.  CONCLUSION

On the basis of the foregoing analysis, it is ORDERED that Defendants' motion for summary judgment (Doc. # 20) is GRANTED as to all of Plaintiffs' claims.

A separate final judgment will be entered.

DONE this 12th day of February, 2014.

                                           /s/ W. Keith Watkins
                                  CHIEF UNITED STATES DISTRICT JUDGE